**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN H. SIEBERT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 C 6681 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| CENTRAL STATES SOUTHEAST AND | ) | |
| SOUTHWEST AREAS HEALTH AND | ) | |
| WELFARE FUND, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

After defendant Central States Southeast and Southwest Areas Health and Welfare Fund ("Central States") denied his request for retiree health benefits, plaintiff John H. Siebert filed this action, claiming that defendant violated § 502(a)(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1) and (3). The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment and denies plaintiff's motion.

## I. BACKGROUND

The following facts come from the parties Local Rule 56.1 statements and, based on their Local Rule 56.1 responses, appear to be undisputed. Plaintiff, who lives in Elmwood Park, Illinois, worked for United Parcel Service ("UPS") from 1974 to 2004. During that time, plaintiff was a member of International Brotherhood of Teamsters ("Teamsters") Local Union No. 705 ("Local 705"). In 2004, he took an indefinite unpaid leave of absence from UPS, maintaining his seniority, and went to work as a business agent for Local 705. He worked for Local 705 continuously until January 2018, when he retired at age 61 and began to collect his Local 705 pension.

During most of plaintiff's employment with UPS, UPS provided health care coverage to its employees and retirees under its own employee benefit plans. However, the collective bargaining agreement ("CBA") between Local 705 and UPS effective August 1, 2013, provided that any "eligible employee covered by this Section who retires effective January 1, 2014 or thereafter shall be provided retiree medical benefits" by Central States. (Def.'s LR 56.1 Resp. ¶ 18, ECF No. 52.) Central States is a self-funded, jointly administered, multi-employer employee benefit plan under ERISA, 29 U.S.C. § 1002(1), administered in Chicago, Illinois. Pursuant to an Illinois Trust Agreement, Central States provides health and welfare benefits to active and retired workers who are or were employed under collective bargaining agreements negotiated between contributing employers, including UPS, and affiliates of the Teamsters, including Local 705. Central States is administered by a Board of Trustees, composed of an equal number of representatives of management and labor.

In May 2014, UPS and Central States entered into a "UPS-Teamsters Employee & Retiree Medical Benefits" agreement ("Medical Benefits Agreement" or "MBA") to govern Central States's assumption of responsibility for providing benefits to UPS employees and retirees represented by the Teamsters during their employment. (Defs.' LR 56.1 Resp. ¶ 21.) Specifically, the MBA provides that "[w]ith respect to claims incurred on and after the Implementation Date by Covered Group members . . . who retire from UPS on or after January 1, 2014, the Central States Fund shall have sole responsibility for and be the exclusive source of funds to provide Central States Fund Medical Benefits for any such Covered Group members" (*id.* ¶ 22), in exchange for a lump-sum payment from UPS. The MBA defines "Covered Group" as "all UPS-Teamster Represented Future Retirees participating in or eligible to participate in any of the UPS Plans and their eligible spouses, surviving spouses and dependents." (*Id.* ¶ 23.) The MBA defines "UPS-

2

Teamster Represented Future Retirees" as "employees of UPS . . . who were represented by [the Teamsters and/or an affiliated local union such as Local 705] during their active employment with UPS and who retire from such employment on or after January 1, 2014." (Pl.'s LR 56.1 Resp. ¶ 36, ECF No. 53.)

As he neared his January 2018 retirement, plaintiff applied to Central States for retiree health coverage. Central States denied the request, and plaintiff appealed, represented by Local 705. In February 2018, Central States denied the appeal, explaining that, under section 3.01 of Central States's UPS Retiree RU Plan Document (hereafter, "Central States plan"), a retiree in plaintiff's position is eligible for health coverage only if his employer has made health and welfare contributions on his behalf for at least forty weeks' worth of work in each of the preceding five years or in seven of the preceding ten years. Central States had not received contributions on plaintiff's behalf in those amounts during the relevant time frames. Plaintiff appealed to the Board of Trustees, arguing that his failure to meet the contribution requirement in recent years should not bar him from receiving retiree health coverage when (a) he would have been eligible for retirement benefits under the old UPS plan (*see* Pl.'s LR 56.1 Stmt., Ex. 3A, Admin. Record, Ex. C, UPS Health and Welfare Package & UPS Health and Welfare Package for Retired Employees (hereafter, "UPS plan"), ECF No. 49-1); (b) Central States agreed to provide benefits to people like him when it entered into the MBA, and it did in fact award benefits to other individuals in similar circumstances; (c) the Local 705 CBA in effect at the time of the MBA expressed an intent to expand, not restrict, retiree benefits; and (d) prior to the transition, Central States representatives gave a presentation in which they assured UPS plan participants that the new plan would be "almost identical" and "equal to—if not better than—"the UPS plan it was replacing. (Defs.' LR 56.1 Resp. ¶ 20). Additionally, plaintiff argued that Central States had given him inadequate notice

of the initial denial of benefits and had not adequately informed him of the reasons for the decision on his intermediate-level appeal.

In June 2019, the Central States Health and Welfare Trustee Appellate Review Committee (hereafter, "Trustees") denied plaintiff's appeal, interpreting the contribution requirement of the participant eligibility provisions in section 3.01 of the Central States plan to apply to plaintiff. (*See* Young Aff., Ex. B, Jun. 17, 2019 Letter, ECF No. 46-3.) The Trustees reasoned that any representations Central States representatives may have made about coverage leading up to the transition were immaterial, particularly given that plaintiff's situation was all but unique and therefore "of no concern to the vast majority of the rank and file Local 705 members [who were] covered by the new CBA" and affected by the transition. (*Id.* at 4.) Although plaintiff had argued to the contrary, the Trustees found only one individual similarly situated to plaintiff who had received retiree health benefits from Central States, and upon inquiry, they learned that this individual had received benefits following a lower-level staff decision, without trustee-level input "or the development of a formal record determining that [the employee] was entitled to benefits." (*Id.* at 5.) The Trustees rejected plaintiff's interpretation of the MBA as well, reasoning that at most it required Central States to cover UPS employees who retired from "active employment" after January 1, 2014, and plaintiff was not an active employee when he retired. The Trustees also rejected plaintiff's procedural challenges, concluding that he had received all the necessary documents and, even if there had been any violations or omissions, they were trivial and harmless.

Plaintiff subsequently filed this suit, and these cross-motions for summary judgment followed.

## II.     STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). The Court applies these "ordinary standards for summary judgment" in the same way whether one or both parties move for summary judgment; when the parties file cross-motions, the Court treats each motion individually, "constru[ing] all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017); *see Reeder v. Carter*, 339 F. Supp. 3d 860, 869-70 (S.D. Ind. 2018).

## III.     DISCUSSION

ERISA § 502 provides a cause of action for a participant or beneficiary of an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Additionally, a participant or beneficiary may bring suit under ERISA § 502 to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the

plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3).

A district court reviews a denial of benefits challenged pursuant to § 502(a) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan confers discretionary authority on its administrator, the court reviews a denial of benefits under the arbitrary and capricious standard. *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017). Under that deferential standard of review, the Court:

> must uphold the decision so 'long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'

*Rabinak v. United Bhd. of Carpenters Pens. Fund*, 832 F.3d 750, 753 (7th Cir. 2016) (quoting *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010)). Such review, however, is not a rubber stamp. *Holmstrom*, 615 F.3d at 766.

Plaintiff concedes that the Trustees have discretionary authority to "interpret and apply the Central States Plan," and therefore the arbitrary and capricious standard applies to their interpretations of the plan. However, plaintiff argues that the Court should review the Trustees' interpretations of other relevant documents, such as the UPS plan, the 2013 CBA, and the MBA, under a *de novo* standard, without deference to the Trustees' interpretation. Plaintiff cites no authority for this proposition, and the Court is skeptical. Initially, if plaintiff is correct, then it would seem to follow that these documents are not part of the ERISA "plan" at issue, *see Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911-12 (7th Cir. 2013) (explaining meaning of "plan"

under ERISA), and if not, then there may be no proper basis for considering them at all, to the extent that they conflict with the plain language of the plan document. *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 817-18 (7th Cir. 2010) ("The plan terms must be . . . given primary effect and strictly enforced, and plan administrators must adhere to 'the bright-line requirement to follow plan documents in distributing benefits.'") (quoting *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 302 (2009)); *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 541 (7th Cir. 1996) ("Extrinsic evidence should not be used where the contract is unambiguous.") (internal quotation marks omitted); *but see Mathews v. Sears Pension Plan*, 144 F.3d 461, 466 (7th Cir. 1998) ("In limited circumstances, however, parties are allowed to present extrinsic evidence to demonstrate that although the contract looks clear, anyone who understood the context of its creation would understand that it doesn't mean what it seems to mean."). Even if it is proper to consider these documents as extrinsic evidence, the Central States plan's grant of "discretionary and final authority" to the Trustees is quite broad, encompassing not only "Trustee decisions interpreting plan documents" but also, more broadly, "Trustee decisions upon claims for benefits." (*See* Pl.'s LR 56.1 Stmt., Ex. 3A, Admin. Record, Ex. B, Central States UPS Retiree RU Plan Document § 7.03.) *See Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107 (7th Cir. 1998) ("[T]he extent of the deference given the administrator [in the text of the plan] determines the extent of judicial deference.") (internal quotation marks omitted). Further, the Seventh Circuit has explained—albeit in a somewhat different context—that, in determining the applicable standard of review, there is no basis for distinguishing between discretion to "'construe the terms of the plan'" and discretion to "'determine eligibility for benefits.'" *Ramsey v. Hercules, Inc.*, 77 F.3d 199, 202 (7th Cir. 1996) (quoting *Firestone*, 489 U.S. at 115); *see Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 253 (5th Cir. 2018) (citing *Ramsey*); *see also Trombetta v.*

*Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996) (rejecting an interpretation of the plan that "would, in effect, mean that the Committee had broad discretion in defining the term 'Employee,' but no discretion in determining which Employees were eligible to participate in the plan"). Thus, under the terms of the Central States plan, the Court owes deference to the Trustees' decision,[1] and to the extent that decision required the Trustees to interpret documents such as the UPS plan, the 2013 CBA, and the MBA, the Court must uphold the decision if it is "possible to offer a reasoned explanation" for it based on those documents, regardless of whether the Court finds the Trustees' interpretation to be the most convincing one.

Plaintiff argues that Central States's decision was arbitrary and capricious for three main reasons: (a) the terms of the Central States plan, particularly as illuminated by the MBA, the UPS plan, the 2013 CBA, and Central States's inconsistent eligibility determination in another case, provide that plaintiff is eligible for retiree health benefits; (b) plaintiff did not receive notice of the initial adverse benefits determination as required under the Central States plan and applicable regulations; and similarly (c) the February 2018 letter notifying him of the denial of his intermediate-level administrative appeal lacked specific reasoning and certain information required under the Central States plan and applicable regulations.

## A. Interpretation of Central States Plan in Light of MBA and Other Documents

Plaintiff's main argument is that he is eligible for retiree benefits under the Central States plan, when the plan is interpreted in light of the MBA, the UPS plan and the 2013 CBA. While

---

[1] Plaintiff does not argue that this deference is limited by any conflict of interest that may afflict Central States as both administrator and fund, and for good reason. The Seventh Circuit has explained that Central States is "a multi-employer welfare plan the trustees of which are required to consist of an equal number of union and employer representatives," and the "union trustees, at least, have no discernible incentive to rule against an applicant." *Manny v. Cent. States, Se. & Sw. Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004).

plaintiff does not contest the Trustees' determination that he has not met the Central States plan's contribution requirement in recent years, he argues that his failure to meet this requirement should not bar him from coverage because Central States promised, both in the MBA and in presenting its plan to participants, to cover future UPS retirees, and he would have been eligible for coverage under the old UPS plan. The Trustees rejected this argument, and this Court finds nothing unreasonable in their decision.

Plaintiff relies principally on the MBA, but his reading of certain provisions in that agreement is strained. First, plaintiff cites a "whereas" clause in the MBA's preamble stating that Central States "wishes to retain the right to amend, modify or terminate retiree medical coverage for such retired UPS employees [*i.e.*, those Teamsters-represented employees who retire after January 1, 2014] after the expiration date of the 2013 CBAs", *i.e.*, as relevant to plaintiff, July 31, 2018, "and can amend, modify or terminate medical coverage for active UPS employees who are represented by the Teamsters at any time, provided that any such amendment, modification, or termination, whether retiree medical coverage or otherwise, is made in compliance with the terms of the [Central States] Fund and applicable law." (Young Aff., Ex. A, Minutes of the Trustee Appellate Review Committee with Attachments, Ex. E, MBA at 1-2, ECF No. 46-2 at 543-44.) According to plaintiff, this clause "restricts the ability of Central States to deviate from the status quo under the UPS plan, at least until July 31, 2018." (Pl.'s Mem. at 9, ECF No. 50.) But plaintiff does not explain—and the Court fails to see—how he arrives at that interpretation. That Central States intended at the time of the MBA to "retain" the right to amend, modify, or terminate retiree medical coverage *after* the expiration of the CBA in force at that time says little or nothing about the scope of the benefits Central States was required to provide during the term of the CBA. Plaintiff seems to imply that, by providing for amending or modifying benefits only after the then-

current CBA expired, the MBA implied that Central States lacked that right until then—but, if anything, the use of the word "retain" rather suggests the opposite, as does the following phrase concerning the right to "amend, modify or terminate" coverage, including "retiree medical coverage," for "active UPS employees . . . at any time."

Plaintiff makes a stronger argument based on the substantive provisions of the MBA, in which UPS and Central States agreed that "[w]ith respect to claims incurred on and after the Implementation Date by Covered Group members who are actively employed by UPS as well as claims incurred after the Implementation Date with respect to Covered Group members who retire from UPS on or after January 1, 2014, the Central States Fund shall have sole responsibility for and be the exclusive source of funds to provide Central States Fund Medical Benefits for any such Covered Group members." (MBA at 6.) The "Covered Group" is defined, in pertinent part, as "all UPS-Teamsters Represented Future Retirees participating in or eligible to participate in any of the UPS Plans and their eligible spouses, surviving spouses and dependents." (*Id.* at 3.) "UPS-Teamsters Represented Future Retirees" are "employees of UPS . . . who were represented by [Teamsters or affiliates] during their active employment with UPS and who retire from such employment on or after January 1, 2014." (*Id.* at 6.) Plaintiff argues that he was eligible to participate in the UPS plan in effect at that time because he met the UPS plan's basic requirements: he had worked full-time for UPS for more than twenty-five years; he was over fifty-five years old; and he was eligible to draw a pension in early retirement. (Def.'s LR 56.1 Resp. ¶ 17.)

But this argument skips a step. Plaintiff may have been eligible to retire and draw a pension at the time of the MBA, but he had not yet retired, and because he was not retired but on an unpaid leave of absence, he was not yet "eligible to participate" in the UPS plan. To be eligible for health benefits, the UPS plan required participants either to have retired, to be contributing at least a

portion of the cost of their coverage if on a leave of absence, or to "receive earnings at least one day during the current calendar month to maintain eligibility for that calendar month." (UPS plan at 11-12, 84, ECF No. 49-1 at 253-54, 326.) Plaintiff was neither retired nor paying contributions nor "receiv[ing] earnings" from UPS at the time of the MBA or at any time until he elected to retire in January 2018, so he was not "eligible to participate" in the UPS plan for retiree medical benefits. Therefore, he was not in the "Covered Group" to which the MBA was intended to apply, and the MBA has no application to the Trustees' decision on his eligibility for benefits under the Central States plan.

Regardless, the Trustees took a different tack, focusing on the fact that the "Covered Group" is made up of "UPS-Teamster Represented Future Retirees," defined in the MBA as UPS employees "who were represented by [Teamsters or affiliates] during their *active employment* with UPS and who retire *from such employment* on or after January 1, 2014." (MBA at 6 (emphasis added).) They interpreted this definition to mean that a person only qualifies as a "UPS-Teamster Represented Future Retiree" if he retires from a status of "active employment," *i.e.*, if he is an active employee at the time of his retirement. Strangely, plaintiff devotes little attention to refuting this reasoning. He simply argues that the Trustees' reasoning "disregards" the fact that the MBA states in one of the introductory "whereas" clauses that it applies to "*former* employees of UPS . . . who retire on or after January 1, 2014," which must mean that it applies to individuals who are already "former" employees as of their retirement dates, and therefore it applies to more employees than just those who remain "active" employees right up until the moment they decided to retire. (Pl.'s Mem. at 10-11; *see* Defs.' LR 56.1 Resp. ¶ 22.)

But this reading is strained. The clause in question reads as follows, in pertinent part:

WHEREAS, the Parties intend that all claims for medical benefits incurred on or after the Implementation Date with respect to the Covered Group members . . . by

11

> *former* employees of UPS who were represented by the Teamsters while in active employment, and who retire on or after January 1, 2014 . . . shall be solely the responsibility and liability of the Central States Fund.

(MBA at 2 (emphasis added).)  Under the most natural reading of this clause, the word "former" simply helps to convey, given the peculiar syntax, that this clause is about claims for medical benefits made by employees after the point at which they formally retire (and therefore are no longer "employees" at all, strictly speaking), but who did not retire before January 1, 2014. It has no bearing on whether a person who was already a "former" employee even before the time he officially retired is entitled to benefits.

It might seem that the Trustees' reading is also strained, particularly to the extent that it might be unclear why it should matter whether plaintiff was in "active employment" at the time of his retirement or technically "eligible to participate" in the UPS Plan at or around the time of the MBA. But courts, including the Seventh Circuit, have enforced provisions that require employees to be "actively at work" at the time their benefits are to start, even where it leads to a harsh result. *See Edwards v. Great-W. Life Assur. Co.*, 20 F.3d 748, 750 (7th Cir. 1994); *Foster G. McGaw Hosp. of Loyola Univ. of Chicago v. Bell Indus., Inc.*, No. 94 C 3987, 1996 WL 3964, at *3 (N.D. Ill. Jan. 2, 1996) (citing *Edwards*); *see also Cozzie*, 140 F.3d at 1109 (finding that an ERISA administrator's interpretation of a certain plan term was reasonable in part because it was "not incompatible with the interpretation that has been given that term in other insurance contexts"); *Van Boxel v. Journal Co. Employees' Pension Tr.*, 836 F.2d 1048, 1053 (7th Cir. 1987) (trustees correctly decided based on pension documents that employee who took a leave of absence to work for his union and never returned to his former job was not entitled to pension benefits, even though he maintained a form of seniority during his leave). While the context of these cases is different, they show that the Court is not free to "rewrit[e] the plan" merely because otherwise the result

12

would be harsh for the plaintiff. *Edwards*, 20 F.3d at 750; *see Young*, 615 F.3d at 817-18 ("The plan terms must be . . . given primary effect and strictly enforced"); *Mitchell v. Lucent Techs. Inc. Pension Plan*, No. 17-CV-8097, 2019 WL 1077128, at \*5 (N.D. Ill. Mar. 7, 2019) ("An ERISA administrator is required to administer the plan 'in accordance with the documents and instruments governing' it; and the Court must likewise enforce the terms of those documents. 29 U.S.C. § 1104(a)(1)(D) . . . . Mandating compliance with the terms of Plan documents is foundational to ERISA.")(citing *Kennedy*, 555 U.S. at 288, and *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001)).

And even if it were inclined to depart from the plain meaning of the relevant documents for purposes of this case, the Court cannot do so for the separate reason that it owes deference to the Trustees' decision, so long as the Trustees have offered a "reasoned explanation, based on the evidence, for a particular outcome," *Rabinak*, 832 F.3d at 753. In assessing whether a decision meets that standard, the "main focus ought to be the text of the plan":

> It is well established that it is the language of an ERISA plan that controls. *See Swaback,* 103 F.3d at 540 (stating ERISA's requirement that the plan be in writing, that federal common law principles apply in interpreting the plan and that extrinsic evidence should not be used when the plan language is unambiguous). This inquiry requires that we begin with the text of the plan and determine whether the administrator's approach demonstrates a reasoned train of thought, one that, in Judge Eschbach's words, "makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." *Exbom* [*v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990)].

*Cozzie*, 140 F.3d at 1109. The Trustees' June 2019 letter rendering their decision (which the Court has already summarized above) explicitly made the requisite connection between the text of the plan, the evidence, and the conclusion by explaining that the plan required plaintiff to meet the Section 3.01 contribution requirement and nothing in the evidence plaintiff submitted persuaded the Trustees that they should read that requirement out of the plan in his case. The Trustees'

13

conclusion was reasonable, based on the evidence and the plan, and the Court is required to uphold their decision.

The fact that a similarly situated individual was treated differently does not change that result. The Trustees explained that one person in an identical position had been granted retiree health benefits under the Central States plan, but that decision had been made by lower-level staff, without any involvement of or review by the Trustees or the development of any "formal record." (Jun. 17, 2019 Letter at 5.) Therefore, the Trustees reasoned, there was "no proof to support the conclusion that had the Trustees been presented with the facts of [the other employee's] circumstances . . . they would have made a decision to grant Retiree Plan benefits" to him. *Id.* Plaintiff does not challenge the factual predicate for this explanation, and the Court finds nothing unreasonable in it. As the Seventh Circuit has explained, "[i]t is not enough . . . to point out that . . . benefits have been awarded to another person [because it] is possible, for example, that a fund might erroneously award benefits to a participant, but that would not mean that it was bound to repeat its error with others who came along." *Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 363-64 (7th Cir. 2009). That is essentially what the Trustees said happened in this case, and without other indicia that the decision was arbitrary, the Court cannot overturn their decision.

Similarly, the facts that UPS and Local 705 expressed an intent to expand, not restrict, benefits in the August 2013 CBA and that Central States representatives assured UPS plan participants that the Central States plan would be at least "equal to—if not better than—" the UPS plan cannot overcome the plain language of the relevant documents and the deference due to the Trustees' decision. *Cozzie*, 140 F.3d at 1108-09, 1111; *Edwards*, 20 F.3d at 750. First, Central States was not a party to the CBA. Second, the promises Central States representatives made in a

14

pre-transition presentation appeared to relate to the scope of the benefits the plan would provide to eligible participants; they were hardly a warranty that anyone eligible for retiree benefits under the UPS plan would be eligible under the Central States plan.[2] The CBA and the presentation simply do not shed much light on the relevant terms of the Central States plan, and certainly not enough to overcome the plan's plain language, especially given the deferential standard of review.

Even if the Court were required not to defer to the Trustees' decision and instead to review it *de novo*, it agrees with their interpretation of the Central States plan and the other relevant documents, including the 2013 CBA and the MBA, and it would reach the same decision under the circumstances. Defendant is entitled to summary judgment on this claim.

One further matter deserves comment. Plaintiff cited almost no legal authority in support of this argument, except to establish the standard of review. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him." *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) (internal citations omitted)). Although the Court has endeavored to address plaintiff's arguments thoroughly, in keeping with "the courts['] . . . clear preference for reaching the merits in litigation," *Lechnir v. Wells*, 157 F. Supp. 3d 804, 807 (E.D. Wis. 2016), it notes that it was not required to do so. To the extent it has failed to address any aspect of plaintiff's argument that he did not support

---

[2] In his appeal to the Trustees, plaintiff framed this issue as one of estoppel, but he appears to have abandoned that argument in his motion for summary judgment. The word "estoppel" never appears in his briefs, which focus instead on the meaning of the plan documents. The Court deems any estoppel argument waived. *See Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 306 (7th Cir. 2020) (issue was waived where it was "never actually argued" to the district court and to hold otherwise would "undermine the essential function of the district court" (internal quotation marks omitted)).

with pertinent authority, the Court considers the argument waived, as it is not the district court's

job "to research the law and construct the parties' arguments for them." *Econ. Folding Box Corp.*

*v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720-21 (7th Cir. 2008).

## B. Procedural Issues and Notice

ERISA § 503 provides certain procedural protections to participants in the case of a denial

of their claim for benefits:

In accordance with regulations of the Secretary, every employee benefit plan shall-

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Regulations promulgated by the Secretary of Labor to implement this provision

provide as follows:

(g) Manner and content of notification of benefit determination.

(1) . . . [T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. . . . The notification shall set forth, in a manner calculated to be understood by the claimant—
(i) The specific reason or reasons for the adverse determination;
(ii) Reference to the specific plan provisions on which the determination is based;
(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 C.F.R. § 2560.503-1.

"Although claimants are entitled to full and fair review of their claims under ERISA, strict compliance with § 1133 and the accompanying regulations is not required; instead, 'substantial compliance is sufficient.'" *Jacobs v. Guardian Life Ins. Co. of Am.*, 730 F. Supp. 2d 830, 846 (N.D. Ill. 2010) (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992)); *see Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 689 (7th Cir. 2004) (citing *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 180 (7th Cir. 1994)). Because these procedural protections exist to "afford the [claimant] an adequate explanation of the denial of the claim and to ensure meaningful review of that denial," *Tolle*, 23 F.3d at 180, the plan administrator substantially complies if he provides the unsuccessful claimant with "a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review," even if the administrator does not technically meet each and every requirement of ERISA or the implementing regulations. *Halpin*, 962 F.2d at 690; *see Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir. 1983) ("[E]very procedural defect will not upset a trustee's decision."), *abrogated on other grounds as recognized in Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 n. 4 (7th Cir. 1994). "'[T]he persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.'" *Halpin*, 962 F.2d at 689 (quoting *Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 534 (7th Cir. 1986)); *see also Ponsetti v. GE Pension Plan*, 614 F.3d 684, 693 (7th Cir. 2010) ("'[T]he administrator must weigh the evidence for and against [the denial or termination of benefits], and within reasonable limits, the reasons for rejecting evidence must be

17

articulated if there is to be meaningful appellate review.'") (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003)).

Plaintiff claims that no written notice of the initial denial of his claim for benefits, much less written notice satisfying the above requirements, appears in the administrative record. Further, plaintiff claims that the February 16, 2018 letter notifying him of the denial of his intermediate-level appeal did not sufficiently describe the "specific reasons" for the decision, stating little more than that plaintiff had not met the contribution requirement in Section 3.01 of the Central States plan, nor did it completely describe the "information necessary . . . to perfect the claim" or "the plan's review procedures," as 29 C.F.R. § 2560.503.1(g)(1) requires.

In asserting these claims, plaintiff loses sight of the fact that defendant was only required to provide "a sufficiently clear understanding of the administrator's decision *to permit effective review*." *Halpin*, 962 F.2d at 690 (emphasis added). Whatever procedural errors there may have been, plaintiff received "effective review." Plaintiff understood that his claim was denied because he did not meet the contribution requirement in Section 3.01, he had the opportunity to fully air his reasons for believing he was entitled to coverage under the Central States plan nevertheless, and the Trustees explained in some detail why they disagreed, discussing and rejecting each of his arguments on the merits. Plaintiff has not identified any way in which any procedural violations defendant may have committed may have hampered the review process, impaired his interests during that process, or made any difference that had any potential to affect the outcome.

In cases in which a notice of denial of benefits was technically defective under ERISA § 503 or 29 C.F.R. § 2560.503.1(g)(1), but the claimant did not show that the defect caused or may have caused him any harm in seeking review of the decision, numerous courts, including the Seventh Circuit, have ruled that the notice met the substantial compliance standard. In *Brehmer v.*

*Inland Steel Industries Pension Plan*, 114 F.3d 656, 662 (7th Cir. 1997), a claimant for pension benefits received a denial letter that, she claimed, did not notify her of information necessary to perfect her claim for benefits, in violation of 29 C.F.R. § 2560.503.1(g)(1)(iii) (then § 2560.503-1(f)(3)). The Seventh Circuit explained that, regardless of whether the denial letter was defective under that provision, it "clear[ly]" informed her of the basis for the decision, and the plaintiff's "response to the letter through her attorney, which specifically disputed the administrator's conclusion on this ground (and not another) and did not equivocate in its understanding of the reason for the denial," confirmed as much. *Brehmer*, 114 F.3d at 662. She therefore had sufficient understanding of the decision to permit effective review. *Id.*

This case is similar. Plaintiff complains of a procedural violation because he did not receive written notice of the denial of benefits, but it is clear from the documentation of his intermediate-level administrative appeal and his appeal to the Trustees that he was not harmed by the defect because he knew and understood the basis for the decision and ran into no real difficulty challenging it, apart from the fact that the decisions ultimately went against him on the merits. The same is true of the February 2018 letter denying plaintiff's intermediate appeal: regardless of any potential procedural defects in it, it is plain from the ensuing proceedings that plaintiff knew enough from the letter to mount a genuine (if ultimately unsuccessful) challenge to the decision before the Trustees and this Court, and that is enough to demonstrate substantial compliance. *See id.*; *Jacobs*, 730 F. Supp. 2d at 850-51 ("[Plaintiff nowhere explains how Defendants' procedural failures hindered his ability to provide additional [information, and therefore] Defendants' letters were sufficient to allow for effective review and hence substantially complied with the ERISA requirements set forth in § 1133 and the accompanying regulations.") (citing *Brehmer*, 114 F.3d at 662; *see also Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533,

540 (5th Cir. 2007) ("[A]lthough the Plan's claims processing at the first two levels of review did not comply with Section 1133, the final level of review, and the most relevant one, substantially complied . . . . Therefore, we find that Wade was provided with "full and fair review" of his claims based on an examination of all communications at all levels between the administrator and the beneficiary."); *Theriot v. Bldg. Trades United Pension Tr. Fund*, 408 F. Supp. 3d 761, 773 (E.D. La. 2019) (explaining that where communications between the parties "'as a whole . . . constituted a meaningful dialogue . . . despite technical violations,'" plaintiff received "full and fair review of her claims") (quoting *Wade*, 493 F.3d at 540).

This rule makes sense, as the First Circuit has explained, because "'allowing a claim for relief because of inadequacy of formal notice without any showing that a precisely correct form of notice would have made a difference would result in benefit claims outcomes inconsistent with ERISA aims of providing secure funding of employee benefit plans.'" *Terry v. Bayer Corp.*, 145 F.3d 28, 39 (1st Cir. 1998) (quoting *Recupero v. New England Tel. & Tel. Co.*, 118 F.3d 820, 840 (1st Cir. 1997) and citing *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 382 (7th Cir. 1994), *disapproved of on other grounds by Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635 (7th Cir. 2005), and *Halpin*, 962 F.2d at 690). Based on this reasoning, numerous courts have required a claimant to make some "showing that a precisely correct form of notice would have made a difference," *Recupero*, 118 F.3d at 840, to the review of his claim in order to prevail in contending that the plan administrator did not substantially comply with the procedural requirements of ERISA § 503 or 29 C.F.R. § 2560.503.1(g)(1). *See Larson v. Old Dominion Freight Line, Inc.*, 277 F. App'x 318, 321-22 (4th Cir. 2008) (finding substantial compliance because claimant ultimately received "all information relevant to his claim on request," the plan administrator's "letter denying [the claimant's] second appeal thoroughly outlined [the] reasons for affirming the

prior termination decision," the claimant did "not bring to [the court's] attention any information that he would add to the administrative record," and therefore the claimant was "able to effectively appeal his benefits termination"); *Bowden v. Grp. 1 Auto., Long Term Disability Plan*, 359 F. Supp. 3d 156, 169 (D. Mass. 2019) ("Even if the plan administrator fails to furnish the requisite notice, . . . the claimant must show prejudice in order to gain relief," and the plaintiff "failed to demonstrate that [the plan administrator's] process caused him prejudice."); *Fisher v. Harvard Pilgrim Health Care of New England, Inc.*, 380 F. Supp. 3d 155, 166 (D. Mass. 2019) ("Plaintiff has not attempted to show how she was prejudiced by defendant's [procedural] failure . . . [and] the development of her case after the error suggests that she was not prejudiced."); *Smith v. Blue Cross Blue Shield of Massachusetts, Inc.*, 597 F. Supp. 2d 214, 223 (D. Mass. 2009) ("Plaintiff's receipt of various verbal indications that his claim would be denied before receiving written word . . . did not prejudice Plaintiff [because the] explanation adequately notified Plaintiff of the reason for the denial as required by the regulations."); *Wintermute v. The Guardian*, 524 F. Supp. 2d 954, 962-63 (S.D. Ohio 2007) ("[U]nless the plaintiff alleges how [a procedural deficiency] has prejudiced her presentation of her case, there is no procedural violation. . . . Since Plaintiff does not allege that she was prejudiced as a result of not receiving certain documents, there is no procedural violation."). Plaintiff has not created a genuine dispute of material fact as to whether he misunderstood the basis for the denial of his claim or the review process or whether any such misunderstanding impaired his right to "effective review," so defendant substantially complied with its obligations under ERISA § 503 and 29 C.F.R. § 2560.503.1(g)(1).

Plaintiff suggests that, even if he cannot prevail on his claims of procedural violations under ERISA § 503 *per se*, these procedural violations strengthen his claim that he is entitled to recovery of benefits under § 502 because defendant's sloppiness in reviewing his claim shows that

its decision was arbitrary and capricious.  Plaintiff cites *Miller v. American Airlines*, 632 F.3d 837, 851 (3d Cir. 2011), which stated that "an administrator's compliance with § 503 in making an adverse benefit determination is probative of whether the decision to deny benefits was arbitrary and capricious."  In addition to the defective notice issues, plaintiff also cites certain "inaccuracies and inconsistencies" (Pl.'s Mem. at 13) in the administrative record, including where defendant misstated plaintiff's retirement date as January 2019 instead of January 2018 and claimed not to have any record of his December 27, 2017 application for benefits.  According to plaintiff, all these errors, considered together, show that defendant acted arbitrarily and capriciously by not following an orderly and professional process in reviewing his claim.

But the end result is the same whether the Court views these errors through the lens of ERISA § 502 or § 503: the Court fails to see how they tainted or impaired the review of plaintiff's claim or could have made any difference to the outcome. It can no more find that defendant acted arbitrarily and capriciously based on these harmless technicalities than it can find that it failed to substantially comply with § 503 and accompanying regulations.  In this regard, the Court is guided by *Militello v. Central States, Southeast & Southwest Areas Pension Fund*, 360 F.3d at 689, in which the plaintiff complained that the defendant omitted the first step of the plan's three-step appeals process. While the Seventh Circuit found the omission "troubl[ing]," the court  explained that it could not "say that failure to follow the appeal process to the letter, without more, necessarily deprived [the plaintiff] of full and fair review" because it did not deprive him of any of the "'core requirements'" of full and fair review; that is, the plaintiff did not complain that he was not afforded knowledge of the basis for the defendant's decision, an opportunity to challenge it, or consideration of his arguments against it.  *Id.* at 690 (quoting *Halpin*, 962 F.2d at 689). Further,

the Seventh Circuit relied on and quoted the following language from *Buttram v. Central States, Southeast & Southwest Areas Pension Fund*, 76 F.3d 896, 901 (8th Cir. 1996):

> Although the procedural irregularities in this case [which included failure to provide written notice of claim denial, the absence of a second-level appeal, and a seven year gap between application of benefits and a third-level appeal] give us pause, they do not demonstrate that the actual decision reached . . . was arbitrary or whimsical.

*Mititello*, 360 F.3d at 690 (quoting *Buttram*, 76 F.3d at 901). In this case, as in *Mititello* and *Buttram*, minor and apparently harmless technical or clerical violations do not demonstrate that "the actual decision reached . . . was arbitrary"; they appear to have had no bearing on the decision at all.

*Miller* is distinguishable in this regard because the procedural irregularities in that case, "[i]nstead of ensuring the procedural fairness of the termination decision, . . . made it exceedingly difficult for [the claimant] to understand, let alone challenge, the bases for [the defendant's] course of action." 632 F.3d at 851. Plaintiff had no such difficulty in this case. He knew the basis of defendant's action, he was able to fully litigate his administrative appeals and press his case in this Court, and he has not indicated any way in which the procedural or other errors he has identified prevented him from doing so more successfully. For these reasons, defendant is entitled to summary judgment.

## IV.    CONCLUSION

For the reasons set forth above, the Court denies plaintiff's motion [48] for summary judgment and grants defendant's motion [45] for summary judgment. Civil case terminated.

**SO ORDERED.**

**ENTERED:   October 21, 2020**

**HON. JORGE ALONSO**
**United States District Judge**